Receipt# 062650

ORIGINAL

ECF

FILED
APR 4 2005
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

STRUCTURAL CONCEPTS, INC. :
: No. 05- 441C
v. :
: Judge__________________
UNITED STATES OF AMERICA :
:

## COMPLAINT

### Parties

1. Plaintiff is Structural Concepts, Inc. ("SCI"), a New Jersey corporation with offices located at 1305 South Roller Road, Ocean, New Jersey 07712.

2. Defendant, is the United States of America, Department of the Army Corps of Engineers ("COE").

3. SCI and COE are parties to Contract No. NAF6V3-00-C-0011 (the "Contract") for the construction of a golf clubhouse, a cart storage building, and related work to the golf course at McGuire Air Force Base, New Jersey ("the Project").

### Jurisdiction

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1491 because this lawsuit involves a breach of contract claim by Plaintiff SCI based upon an express contract with the COE.

5. This lawsuit is timely filed pursuant to 41 U.S.C. §609(a) following a Final Decision of the Contracting Officer of the United States Army Corps of Engineers.

### Background Facts

6. On January 11, 2000, the United States Army Corps of Engineers issued

solicitation number NAF6V3-00B-0004 seeking sealed bids ("IFB") for the construction of the Project at McGuire Air Force Base, New Jersey ("McGuire AFB").

7. The IFB contained the standard FAR and DFARS clauses in Section 00700 including the Suspension of Work and the Changes clause. In addition, the IFB contained Special Contract Requirements in Section 00800 applicable to the performance of the Project.

8. The Suspension of Work clause of Section 00700 provided, in part, as follows:

> If the performance of all or any part of the work is, for an unreasonable period of time, suspended, delayed, or interrupted (1) <u>by act of the Contracting Officer in the administration of this contract</u>, or (2) by the Contracting Officer's failure to act within the time specified in this contract (or within a reasonable time if not specified), <u>an adjustment shall be made for an increase in the cost of performance of this contract (excluding profit) necessarily caused by the unreasonable suspension, delay, or interruption, and the contract modified accordingly</u>. (emphasis added)

9. The Changes Clause of Section 00700 provided, in part, as follows:

> (a) The Contracting Officer may, at any time, without notice to the sureties, if any, by written order, designated or indicated to be a change order make changes in the work within the general scope of the contract. . .
>
> (b) Any other written or oral order… from the Contracting Officer that causes the change shall be treated as a change order under this clause. . .
>
> * * *
>
> (d) If any change under this clause causes an increase or decrease in the Contractor's <u>cost of</u>, or the time required for, the performance of any part of the work under this contract, whether or not changed by any such order, the Contracting Officer shall make an adjustment and modify the contract in writing.

10. The Construction Limits and Access Route provision of Section 00800 provided in part, as follows:

* * *

> 3. All material deliveries will be through the McGuire Air Force Base main entrance gate #1, unless otherwise directed by the Contracting Office.
>
> 4. Contractor and subcontractor personnel's POV's shall access the site through the main gate.

11. Following the receipt of all bids, SCI was determined to be the low responsive and responsible bidder.

12. On June 9, 2000, the COE awarded Contract No. NAF6V3-00-C-0011 to SCI for the lump sum amount of $3,054,000 which was increased through modification to the amount of $3,133,075.

13. On August 10, 2000, the COE issued the Notice to Proceed stating that the work was to commence within five days of receipt and to be completed within 365 calendar days, or by August 16, 2001.

14. Modification P-00001 dated June 18, 2001 extended the contract completion date 126 days, or until December 20, 2001, due to inclement weather.

15. Modification P-00002 dated June 12, 2002, extended the contract completion date another 14 days, or until January 3, 2002, due to the addition of extra work.

16. Modification A-00001 dated December 30, 2002, extended the contract completion date an additional 45 days, or until February 17, 2002, due to the addition of further extra work.

17. On Tuesday, September 11, 2001, following the terrorist attacks on the World

Trade Center and the Pentagon, SCI was advised that McGuire AFB was no longer open to contractors for the performance of contract work. All contractors working on the Base were directed to leave McGuire AFB.

18. On Tuesday, September 18, 2001, SCI was informed by the Contracting Officer that McGuire AFB was now open to all contractors for the performance of work. However, SCI's access to McGuire AFB was still unreasonably and excessively restricted, prohibited, delayed, impacted and disrupted.

19. For approximately 23 days following September 18, 2001, virtually no work could be performed by SCI.

20. At the end of the 23 day time period, SCI's access to the work was materially impacted by the order of the Contracting Officer, acting by and on behalf of the Army Corps of Engineers, that SCI access McGuire AFB through the neighboring Fort Dix.

21. As a result of the Contracting Officer's decision to change the entrance to the Project site, SCI and its subcontractors were unreasonably delayed, and experienced unreasonably long lines and inspections gaining admission to the Project site.

22. Upon information and belief, the COE was aware that its actions were having an unreasonably adverse impact upon SCI, however, it took no steps to alleviate this unreasonable conduct.

23. Upon information and belief, the COE's inspections of SCI's vehicles were overzealous and unreasonable.

24. Upon information and belief, other contractors were treated differently than SCI in gaining access to the Base.

25. The Contract Documents at Section 00800, paragraph X4 stated that SCI would

have access to the work through its main gate. This was changed to require access through the Fort Dix entrance.

26. The Contracting Officer's decision to change the terms of the Access Route provision of SCI's Contract caused SCI and its subcontractors to incur additional costs for delay, disruption and inefficiency.

27. SCI was materially impacted, delayed and disrupted by the aforementioned events which were beyond its control and at the direction of the COE.

28. As a result of these impacts, SCI incurred additional costs, including but not limited to additional labor, equipment, field overhead and home office overhead. The total value of SCI's claim is $166,060.79.

29. On May 21, 2002, Administrative Contracting Officer ("ACO") Paul Jalowski informed SCI that the delays experienced by SCI resulted from a sovereign act of the Federal Government and SCI was entitled to an eighty (80) day time extension but no compensation for costs incurred as a result of the delay.

30. SCI agreed with the time extension allowed by the COE but strongly disagreed with the ACO's refusal to issue an equitable adjustment to the contract.

31. On February 17, 2004, SCI filed a claim seeking $166,060.79 for the costs incurred by SCI because it was not allowed onto the military base immediately following September 11, 2001 terrorist attacks and in securing admittance to the base only after prolonged delays.

32. On or about April 8, 2004, the COE denied SCI's claim and issued a Final Decision. A copy of this decision is attached hereto as Exhibit A and incorporated by reference.

**COUNT I**

33. SCI incorporates all of the above paragraphs as if fully set forth herein.

34. The Construction Limits and Access Route provision of Section 00800 provided in part, as follows:

* * *

> 3. All material deliveries will be through the McGuire Air Force Base main entrance gate #1, unless otherwise directed by the Contracting Office.
>
> 4. Contractor and subcontractor personnel's POV's shall access the site through the main gate.

35. This provision in SCI's contract was changed by the COE to require access through the Fort Dix entrance.

36. The Contracting Officer's decision to change the terms of the Construction Limits and Access Route provision of SCI's Contract caused SCI and its subcontractors to incur additional costs for delay, disruption and inefficiency.

37. The COE's change in the access requirements to McGuire AFB was a change to SCI's contract by the Government acting as a party to the contract, not a sovereign act of the Government.

38. The COE's change in the access requirements was arbitrary and capricious and an unreasonable interference with SCI's performance of its contract.

WHEREFORE, Plaintiff Structural Concepts, Inc. demands judgment of and from the United States as follows:

a. Costs incurred as a result of 80 days of delay incurred by SCI in the amount of $166,060.79;

b. Interest pursuant to the Contract Disputes Act;

c. All attorneys fees and cost incurred in this case; and

d. Such other relief as this Court deems just and proper.

**COUNT II**

39. SCI incorporates all of the above paragraphs as if fully set forth herein.

40. The Suspension of Work clause of Section 00700 provides that if the performance of all or any part of the work is, suspended, delayed, or interrupted for an unreasonable period of time, by act of the Contracting Officer in the administration of the contract, an adjustment shall be made for an increase in the cost of performance of this contract necessarily caused by the unreasonable suspension, delay, or interruption, and the contract modified accordingly.

41. Following the terrorist attacks of September 11, 2001, SCI's access to McGuire AFB was unreasonably and excessively restricted, prohibited, delayed, impacted and disrupted.

42. The Contracting Officer's decision to change the entrance to the Project site caused SCI and its subcontractors unreasonable delays in gaining admission to the Project work site due to unreasonably long lines and overzealous inspections.

43. As a result of these impacts, SCI incurred additional costs, including but not limited to additional labor, equipment, field overhead and home office overhead in the amount of $166,060.79.

44. SCI is entitled to an equitable adjustment under the Contract for the costs incurred as a result of the Contracting Officer's decision.

WHEREFORE, Plaintiff Structural Concepts, Inc. demands judgment of and from the United States as follows:

a. Costs incurred as a result of 80 days of delay incurred by SCI in the amount of $166,060.79;

b. Interest pursuant to the Contract Disputes Act;

c. All attorneys fees and cost incurred in this case; and

d. Such other relief as this Court deems just and proper.

RHOADS & SINON, LLP

By: Kelly H. Decker

David W. Francis
dfrancis@rhoads-sinon.com
Kelly H. Decker
kdecker@rhoads-sinon.com
One South Market Square, 12th Floor
P.O. Box 1146
Harrisburg, PA 17108-1146
(717) 233-5731
(717) 231-6600 (fax)

Date: 4/1/05

DEPARTMENT OF THE ARMY
NEW YORK DISTRICT, CORPS OF ENGINEERS
JACOB K. JAVITS FEDERAL BUILDING
NEW YORK, N.Y. 10278-0090

REPLY TO ATTENTION OF

8 Apr 2004

Office of Counsel

SUBJECT: Contract No. NAF6V3-00-C-0011, FY99 Golf Clubhouse, McGuire Air Force Base, New Jersey

George Moutis, President
Structural Concepts, Inc.
1305 S. Roller Road
Ocean, New Jersey 07712

Dear Mr. Moutis:

Reference is made to your letter, dated February 17, 2004 (Tab C). You request the sum of $166,060.79 for the additional cost allegedly incurred by your firm during eighty (80) days of delay throughout the period of performance of the subject contract between Structural Concepts, Inc. (SCI) and the Army Corps of Engineers.

Based upon the available record, the following are my Findings of Fact, Analysis, and Decision.

Findings of Fact

1. On June 9, 2000, the U.S. Army Corps of Engineers, New York District, awarded the subject contract to SCI ("the Contractor" or "Contractor") for construction of a golf clubhouse, a cart storage building, and related work to the golf course (a non-appropriated fund instrumentality, or NAFI) at McGuire Air Force Base, New Jersey. Tab D.

2. The contract was awarded in the lump sum amount of $3,054,000, which was increased through modification to the amount of $3,084,375.

3. The Notice to Proceed was issued to SCI on August 10, 2000. Tab E. Work was to commence within five days or receipt and be completed within 365 calendar days, or by August 16, 2001.

EXHIBIT
A
ALL-STATE LEGAL SUPPLY CO.

4. Modification P-00001, dated June 18, 2001, extended the contract completion date 126 days, or until December 20, 2001, due to poor weather. Tab F.

5. Modification P-00002, dated June 12, 2002, extended the contract completion date another 14 days, or until January 3, 2002, due to the addition of extra work. Tab G.

6. Modification A-00001, dated December 30, 2002, extended the contract completion date an additional 45 days, or until February 17, 2002, due to the addition of further extra work. Tab H.

7. The following provisions of the contract are relevant to this claim.

CONTRACT CLAUSES

3. CHANGES

(a) The Contracting Officer may, at any time, without notice to the sureties, if any, by written order designated or indicated to be a change order, make changes in the work within the general scope of the contract ...

(b) Any other written or oral order ... from the Contracting Officer that causes a change shall be treated as a change order under this clause ...

...

(d) If any change under this clause causes an increase or decrease in the Contractor's cost of, or the time required for, the performance of any part of the work under this contract, whether or not changed by any such order, the Contracting Officer shall make an adjustment and modify the contract in writing.

20. PERMITS AND RESPONSIBILITIES

The Contractor shall, without additional expense to the NAFI, be responsible for obtaining any necessary licenses and permits, and for complying with any Federal, State, and municipal laws, codes, and regulations applicable to the performance of the work.

27. SUSPENSION OF WORK

(a) The Contracting Officer may order the Contractor, in writing, to suspend, delay, or interrupt all or any part of the work of this contract for the period of time that the Contracting Officer determines appropriate for the convenience of the NAFI.

(b) If the performance of all or any part of the work is, for an unreasonable period of time, suspended, delayed, or interrupted (1) by an act of the Contracting Officer in the administration of the contract, or (2) by the Contracting Officer's failure to act within the time specified in this contract (or within a reasonable time if not specified), an adjustment shall be made for any increase in the cost of performance of this contract (excluding profit) necessarily caused by the unreasonable suspension, delay, or interruption, and the contract modified in writing accordingly.

65. DEFINITIONS

(c) "Contracting Officer" means a person with the authority to enter into, administer, and/or terminate contracts and make related determinations and findings. The term includes certain authorized representatives of the Contracting Officer acting within the limits of their authority as delegated by the Contracting Officer.

SPECIAL CONTRACT REQUIREMENTS

1. COMMENCEMENT, PROSECUTION AND COMPLETION OF WORK

. . .

b. Location: The site of work is located at McGuire AFB, Wrightstown, NJ. The site of the work is on a military reservation and all rules and regulations issued by the Commanding Officer covering general safety, security, and sanitary requirements, etc., shall be observed by the Contractor.

. . .

x. Construction Limits and Access Route:

. . .

3. All material deliveries will be through the McGuire Air Force Base main entrance gate #1.

4. Contractor and subcontractor personnel POV's shall access the site through the main gate.

11. PHYSICAL DATA

. . .

b. Transportation Facilities:

. . .

(2) Highways and Roads: US Highway 31 and New Jersey State #130 serve the locality of the proposed work. Roads within the military reservation proposed to be used by the Contractor, [sic] shall be subject to prior approval of the Post authorities ...

8. On Tuesday, September 11, 2001, at approximately 9:15 AM (0915 hours in military time), all of McGuire Air Force Base went on an "Alert" status, due to the terrorist attacks on the World Trade Center (WTC) and the Pentagon. Contractor's Daily Quality Control Report (QCR) No. 391 (Tab I) identifies the impact upon the Contractor and its subcontractors, i.e., "the entire steel crew left site", "no other subs were able to get on base", "plumber tried to get on base but could not enter", "no activities were started or finished today".

9. The following day, Contractor was unable to work since the entire military reservation was "off limits". Tab J.

10. The base was still "off limits" to contractors as of Monday, September 17. Tab K.

11. On Tuesday, September 18, the base was "opened for contractors"; although SCI reported that none of its subcontractors gained admittance to the base. Tab L.

12. After that date, contractors and subcontractors gained entrance to the base only after a thorough and time-consuming security check. For example, on October 10, SCI reported that its excavating subcontractor waited in line

at the gate for three hours and its painting subcontractor four hours. Tab M.

13. In response to Contractor's verbal requests for additional compensation, Administrative Contracting Officer (ACO) Paul Jalowski informed SCI on May 21, 2002 that, because the delays resulted from a sovereign act of the Federal Government, SCI was entitled to a time extension but no additional monetary consideration. Tab N. SCI has rejected Mr. Jalowski's verbal proposal of an eighty (80) day time-only extension.

13. On February 17, 2004, SCI's President filed the instant claim, seeking the sum of $166,060.79 for the cost of delays incurred by SCI both in not being allowed onto the military reservation and in securing admittance to the base only after prolonged delays. Tab C.

## Conclusion

The Contractor seeks the sum of $166,060.79 for the costs incurred in being delayed or denied access to the worksite following the terrorist attacks of September 11, 2001.

The claim presents documentation of the delays experienced by SCI and its subcontractors. Regarding the rationale for the ACO's decision to permit a time extension but no financial damages, SCI states that, "In review of the sovereign act that has been identified in Mr. Jalowskis' [sic] letter we have determined that it is not applicable to the related events of this contract." SCI does not specify whether it contends that the sovereign act (restricting or forbidding access to the base) was not the cause of the delays or whether it contends that this action was not a "sovereign" act. Thus, both alternatives claims will be addressed.

The former claim, that the act of closing and restricting McGuire Air Force Base was "not applicable" to the delays, is clearly erroneous. The Contractor's own Quality Control Reports (which were submitted for the period September 11 through October 19, 2001) demonstrate that all the delays claimed were a direct result of the heightened security measures enacted on September 11, 2001. The reasons range, in SCI's own words, from "Base went to

alert" on September 11, to "Threatcon [threat conditions] in effect" on October 19.

The latter claim, that the delays were not the result of a "sovereign act" is equally incorrect. While it is true that the Government and SCI were engaged in a contractual relationship, the actions at issue in the claim were taken by the Government in its sovereign capacity. The actions of the government in restricting and denying access to McGuire Air Force Base were taken to affect the general public, not SCI individually, even if SCI did experience some impact from those decisions. This was, clearly, not a change directed by the Contracting Officer under the Changes Clause of the contract. Nor was it an order from the Contracting Officer to cease work under the Suspension of Work Clause.

The dual nature of the Federal Government as both contracting party and sovereign entity has been long recognized. Courts, administrative bodies, and contracting agencies have long adhered to the rule that the United States, in its contractual capacity, may not be held liable for a negative effect upon an entity with whom it has contracted for damages caused by the Government acting in its sovereign capacity. A public, general governmental action, whether executive or legislative, constitutes neither a change to any individual contract nor a violation of any contracting agency's duty to cooperate with any particular private parties.

Heightened security measures at a military facility, affecting every person and vehicle entering the facility, not just this lone contractor, are the archetype of a broad, public action of the federal sovereignty. The contract itself made SCI aware of the requirement to follow federal regulations, as well as security directions of the McGuire Air Force Base commander, during contract performance. Thus, SCI is not entitled to additional financial compensation for delays in its performance caused by these security enhancements. Like weather delays, SCI is entitled only to additional time for contract completion. The ACO's decision, as stated in his May 21, 2002 letter, that SCI is due only an increase in time is correct.

In view of the above, and the record as a whole, the Contractor's claim is denied in its entirety.

## Decision

The Owner's claim for $166,060.79 is hereby denied.

This notice constitutes the final decision of the Contracting Officer in accord with the Disputes Clause of your Leases.

This decision may be appealed to the Armed Services Board of Contract Appeals, Skyline Six, 5109 Leesburg Pike, Falls Church, Virginia 22041-3208. If you decide to make such an appeal, you must mail or otherwise furnish a written notice thereof to the Armed Services Board of Contract Appeals within ninety (90) days of the date you receive this decision. A copy thereof shall be furnished to the undersigned Contracting Officer. The notice shall indicate that an appeal is intended and shall reference this decision.

You may, solely at your election, proceed under the Armed Services Board of Contract Appeals' small claims procedure for claims of $10,000 or less or their accelerated procedure for claims of $50,000 or less.

In lieu of appealing to the Armed Services Board of Contract Appeals, you may bring an action in the United States Court of Federal Claims within twelve (12) months of the date you receive this decision.

Ella D. Snell
Chief, Contracting Division
Contracting Officer